IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ADRIAN JACOBO HERNANDEZ, | ) | No. 81783-3-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| CITY OF KENT, a Washington Municipal Corporation, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HAZELRIGG, J. — Adrian Jacobo Hernandez challenges the forfeiture of his vehicle by the City of Kent pursuant to a criminal investigation. Jacobo Hernandez concedes forfeiture was proper under RCW 69.50.505, but argues that the forfeiture violates the Excessive Fines Clause of the Eighth Amendment of the United States Constitution. Because an individual's financial circumstances must be considered prior to a forfeiture determination, and because Jacobo Hernandez was found to be indigent in this and the related criminal proceedings, the forfeiture of his only asset is grossly disproportionate and therefore unconstitutional. We reverse.

FACTS

In June 2018, Adrian Jacobo Hernandez was arrested during a controlled purchase of methamphetamine conducted by the City of Kent Police Department.

Jacobo Hernandez had delivered methamphetamine to a residence in his Dodge Charger. While he used his vehicle to deliver the methamphetamine, the record demonstrates it was not purchased with drug money, but rather had been purchased out of salvage and restored by Jacobo Hernandez.

Jacobo Hernandez was charged in the United States District Court for the Western District of Washington and qualified for representation by a federal public defender. He entered a guilty plea to one count of possession with intent to distribute methamphetamine in May 2019. Jacobo Hernandez received multiple sentencing deductions under the Federal Sentencing Guidelines, including a "Minor Role Adjustment" and was ultimately sentenced to 24 months in prison and a mandatory assessment penalty of $100. No supervised release was ordered. The federal judge declined to impose a fine, finding that Jacobo Hernandez was "financially unable and [was] unlikely to become able to pay a fine." He has since completed his sentence and was removed from the United States.

In 2018, the City of Kent initiated forfeiture proceedings to seize Jacobo Hernandez' vehicle. Jacobo Hernandez timely filed a request for a hearing, where he argued the forfeiture violated the Eighth Amendment Excessive Fines Clause because the vehicle (valued at $3,000 to $4,000) was the only asset in his estate. He had no bank accounts or savings other than $50 in his jail account. The hearing examiner found the forfeiture did not violate the Eighth Amendment and forfeited the vehicle to the Kent Police Department. This determination was affirmed by the King County Superior Court. He appeals.

HISTORY OF CIVIL ASSET FORFEITURE IN WASHINGTON

In 1971, Washington enacted RCW 69.50.505, permitting civil asset forfeiture. LAWS OF 1971, 1st Ex. Sess., ch. 308 § 69.50.505. The statute permitted forfeiture of property which was used or intended to be used in the manufacture, distribution, or acquisition of controlled substances. Id. The law enforcement agency who seized the property was permitted to retain the entirety of the property for official use, sell it and retain the proceeds, or forward it for disposition. Id. There were no reporting requirements. In 1982, the statute was amended, including requiring 50 percent of the proceeds from sold forfeitures to be deposited into the general fund of the state, county, and/or city of the law enforcement agency. LAWS OF 1982, ch. 171, § 1. In 1984, this was again changed to give 50 percent of sold forfeiture proceeds to the general fund and 50 percent to the state treasurer to be deposited in the public safety and education account. LAWS OF 1984, ch. 258, § 333.

In 1988, the statute was further amended and the legislature made explicit findings that the goal of civil asset forfeiture was to compensate law enforcement for the costs of investigating drug crimes and deter drug offenses by reducing profits from drug trafficking. LAWS OF 1988, ch. 282 § 2. The legislature also increased the amount of proceeds law enforcement could retain, allocating 75 percent of proceeds to the general fund of the state, county, and/or city, but requiring the money to be "used exclusively for the expansion or improvement of law enforcement services." Id. Twenty-five percent of proceeds were retained by the state treasurer to be deposited in the public safety and education account

(unless the proceeds were less than $5,000). Id. Still, there were no reporting requirements. In 1992, the legislature permitted law enforcement to keep 100 percent of proceeds. LAWS OF 1992, ch. 211 § 2. Twenty years after the statute was created, the legislature added a requirement that law enforcement keep a record of the property and the amount of money, to be compiled and filed with the state treasurer quarterly. Id. The modern version of the statute allows law enforcement to keep 90 percent of the proceeds, remitting 10 percent to the state general fund. RCW 69.50.505. The recording requirement remains. Id.

During consideration of amendments to the statute in 2001, several stakeholders testified that they had concerns about underlying injustices in the statute. See HOUSE COMM. ON JUDICIARY, HB REP. on Substitute H.B. 1995, 57th Leg., Reg. Sess. (Wash. 1993). These stakeholders testified that "[t]he seizing agencies have a direct conflict of interest," and that "[t]here is no incentive to reign [sic] in police misconduct." Id. at 5. The stakeholders also identified disproportionate impacts, testifying that "[t]he vast majority of cases are small time cases, not big drug dealers." Id.

This testimony reflects many issues raised by legal scholars. The "Research Working Group of the Task Force on Race and the Criminal Justice System" reports numerous concerns about civil asset forfeiture.[1] The task force stated the law "creates a conflict between a law enforcement agency's economic self-interest and traditional law enforcement objectives" because law enforcement

---

[1] Research Working Grp., Task Force on Race and the Criminal Justice Sys., Preliminary Report on Race and Wash. Criminal Justice Sys., 47 GONZAGA L. R. 251 (2012).

relies on forfeiture to fund their operations.[2]  "Legitimate goals of crime prevention are compromised when salaries, equipment, and departmental budgets depend on how many assets are seized during drug investigations."[3]  Another concern reflected by the Research Working Group, and by Jacobo Hernandez, is that even indigent claimants do not have a right to appointed counsel during the proceedings. At oral argument before this court, defense counsel[4] noted that Jacobo Hernandez would only have been able to pay counsel $7.50 an hour before his legal costs outweighed the value of the property seized.[5]

Civil asset forfeiture is a million-dollar industry in Washington.  The Institute for Justice found that Washington State accumulated nearly $145 million in civil asset forfeitures between 2001 and 2018.[6]  Last year the state accumulated $11.9 million, $11.6 million of which came from drug offense forfeitures.[7]  These figures do not include proceeds the state received from federal forfeitures.

---

[2] Id. at 281.

[3] Id. at 281–82.

[4] Counsel for Jacobo Hernandez indicated at oral argument that he sought express permission from his supervisor at the federal public defenders to assist his client with these corollary proceedings. As such, Jacobo Hernandez was represented by his Federal Public Defender at the initial forfeiture hearing, the appeal to King County Superior Court and on appeal to this court.

[5] Under RCW 69.50.505(6), a claimant who substantially prevails in a challenge to forfeiture is entitled to reasonable attorney fees. The record demonstrates that the hearing examiner in this case was well aware of this provision and, in fact, seemed to base his decision in part on the fact that Jacobo Hernandez would be entitled to attorney fees if he prevailed, which he characterized as a "ludicrous" result.

Entitlement to attorney fees for a prevailing party is a common, reasonable result in our legal system, particularly when there is no right to appointed counsel in the proceedings. A result authorized by the legislature, which makes our justice system more accessible to individuals of all socioeconomic classes, can hardly be described as "ludicrous." However, in light of the fact that Jacobo Hernandez did not seek fees on appeal, we need not consider such an award here.

[6] Policing for Profit: Washington, INSTITUTE FOR JUSTICE, https://ij.org/report/policing-for-profit-3/?state=WA (last visited Oct. 13, 2021).

[7] Eric Scigliano, The Strange, Failed Fight to Rein in Civil Forfeiture in Washington, CROSSCUT (July 13, 2021), https://crosscut.com/news/2021/07/strange-failed-fight-rein-civil-forfeiture-washington.

With this legislative and procedural history in mind, we turn to Jacobo Hernandez' constitutional challenge.

## ANALYSIS

### I. Mootness

As a general rule, this court does not decide moot cases where the court can no longer provide effective relief. Westerman v. Cary, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994). "However, a recognized exception permits an appellate court, at its discretion, to 'retain and decide an appeal which has otherwise become moot when it can be said that matters of continuing and substantial public interest are involved.'" Id. (quoting Sorenson v. City of Bellingham, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). There are several factors to consider in determining whether an appeal involves matters of continuing and substantial public interest: (1) public or private nature of the issue; (2) whether a determination is desirable to give guidance to public officers; (3) whether the issue is likely to recur; (4) level of adverseness and quality of advocacy; and (5) the likelihood that the issue will escape review due to short-lived facts. Id. at 286–87.

Less than 24 hours before oral argument, Jacobo Hernandez submitted an unopposed motion to dismiss his appeal, stating that the parties had reached a monetary settlement. We denied the motion. After oral argument, the parties confirmed they were continuing to move forward with their prior settlement agreement, despite the court's denial of the motion to dismiss, and expected the agreement to be finalized within a few weeks. Because the parties have reached a settlement, this court cannot provide effective relief. See Id. at 287. However,

review is justified because the issues involved in this appeal are matters of "continuing and substantial public interest." Id. at 286.

First, the issue is public in nature. The appeal comes from a municipal proceeding initiated by the City of Kent pursuant to statutory authority allowing localities to forfeit vehicles which are used to facilitate the delivery of controlled substances. See RCW 69.50.505.

Second, an authoritative determination is desirable to give guidance to public officers, particularly hearing examiners who are responsible for deciding whether a forfeiture violates the Constitution. While this appeal was pending, the Washington State Supreme Court issued its opinion in City of Seattle v. Long, __ Wn.2d __, 493 P.3d 94 (2021). Long revised the test for the Excessive Fines Clause, expressly requiring courts to consider the defendant's ability to pay when conducting an excessive fine analysis. Id. at 107. This case presents an issue of first impression in interpreting Long's impact, including analyzing its applicability to civil asset forfeiture and determining whether an individual's financial circumstances can outweigh the other proportionality factors. The answers to these questions will provide much needed guidance to public officials applying constitutional principles to individual cases.

Third, the issue is likely to recur, as any individual who uses a vehicle to facilitate the sale, delivery, or receipt of controlled substances (or materials used in manufacturing, compounding, processing, or delivering controlled substances) is subject to civil asset forfeiture. Fourth, prior to settlement, there was a genuine level of adversity and quality of advocacy in briefing.

Finally, it is likely that the issue will escape review due to short-lived facts. If the owner does not notify the law enforcement agency of their claim of ownership within 45 days (90 for real property), the item is deemed forfeited. RCW 69.50.505(4). Additionally, there is no right to appointed counsel in challenging a seizure.[8] As noted by Jacobo Hernandez at oral argument, individuals challenging a forfeiture risk losing more in attorney fees than their property may be worth.

All five factors weigh in favor of reviewing Jacobo Hernandez' case because it presents substantial and continuing issues of public interest. As such, we turn to the merits of his claim.

II.     Whether Forfeiture of Jacobo Hernandez' Vehicle Violates the Eighth Amendment of the United States Constitution

        A.      Applicability of Long v. City of Seattle

The Washington State Supreme Court in Long considered vehicle impoundment charges under the Excessive Fines Clause. 493 P.3d at 99. In its analysis, the court relied on several U.S. Supreme Court cases analyzing civil asset forfeiture. Id. at 107 (citing Austin v. United States, 509 U.S. 602, 609–10, 113 S. Ct. 2801, 125 L. Ed. 2d 788 (1993); United States v. Bajakajian, 524 U.S. 321, 327–28, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (2019); Timbs v. Indiana, 139 S. Ct. 682, 686, 203 L. Ed. 2d 11 (2019)). The court concluded that "courts considering whether a fine is constitutionally excessive should also consider a person's ability to pay." Long, 493 P.3d at 114. It also stated that for Excessive Fines protection to apply, there must be a sanction that is a "fine" and it must be

---

[8] See Task Force on Race and the Criminal Justice System, Preliminary Report on Race and Washington's Criminal Justice System, supra note 1.

"excessive." Id. at 109. The U.S. Supreme Court held that forfeitures were punishments, stating that forfeiture under the federal statutes is "'payment to a sovereign as punishment for some offense.'" Austin, 509 U.S. at 622 (quoting Browning-Ferris Indus. of Vt. v. Kelco Disposal, Inc., 492 U.S. 257, 265, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989). Again in Timbs, the U.S. Supreme Court characterized the Excessive Fines Clause to limit "the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" 139 S. Ct. at 687 (quoting Bajakajian, 524 U.S. at 327–28).

These definitions by the U.S. Supreme Court make clear that civil asset forfeitures are identical for purposes of an Excessive Fines analysis. Therefore, Long applies to civil asset forfeitures and controls our review in this case.

### B.    Instrumentality and Proportionality

Article 1, Section 14 of the Washington Constitution states "[e]xcessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." The Eighth Amendment of the United States Constitution states "[e]xcessive bail shall not be required, not excessive fines imposed, nor cruel and unusual punishments inflicted." Long held that the state and federal provisions were coextensive for the purposes of excessive fines, absent an analysis under State v. Gunwall providing otherwise. 493 P.3d at 107 (citing 106 Wn.2d 54, 720 P.2d 808 (1986)). In 2019, the U.S. Supreme Court held that the Excessive Fines Clause applied to the states through the Fourteenth Amendment. Timbs, 139 S. Ct. at 698. Because the Eighth Amendment applies to the states, and the federal

Excessive Fines Clause is coextensive to the Washington state clause, we mirror the analysis in Long and consider Jacobo Hernandez' claim under the federal constitution.

"The purpose of the Eighth Amendment [of the United States Constitution] was to limit the government's power to punish." Austin, 509 U.S. at 609. To trigger its protections, "a sanction must be a 'fine' and it must be 'excessive.'" Long, 493 P.3d at 109. The United States Supreme Court held that civil asset forfeiture that constitutes "payment to a sovereign as punishment" is subject to the Excessive Fines Clause. Austin, 509 U.S. at 622. The City of Kent does not argue the Excessive Fines Clause is inapplicable, only that this forfeiture does not violate the Clause.

While Austin held that civil asset forfeiture was subject to the Excessive Fines Clause, the Court declined to give a test for determining excessiveness. 509 U.S. at 622; see also Tellevik v. Real Prop. Known as 6717 100th St. S.W. Located in Pierce County, 83 Wn. App. 366, 372–73, 921 P.2d 1088 (1996). In analyzing how to determine excessiveness, Division II of this court considered several federal circuit tests, ultimately deciding to examine instrumentality and proportionality. Tellevik, 83 Wn. App. at 374. For instrumentality, the non-exhaustive factors include: (1) the role the property played in the crime; (2) the role and culpability of the property's owner; (3) whether the offending property can be readily separated from innocent property; and (4) whether the use of the property was planned or fortuitous. Id. at 374–75. For proportionality, the similarly non-exhaustive factors consist of: (1) the nature and value of the property; (2) the effect

of forfeiture on the owner and innocent third parties; (3) the extent of the owner's involvement in the crime; (4) whether the owner's involvement was intentional, reckless, or negligent; (5) the gravity of the type of crime, as indicated by the maximum sentence; (6) the duration and extent of the criminal enterprise, including the street value of illegal substances; and (7) the effect of the crime on the community, including costs of prosecution. Id. In Long, the Washington State Supreme Court used the following factors in considering proportionality: 1) the nature and extent of the crime; 2) whether the violation was related to other illegal activities; 3) the other penalties that may be imposed; 4) extent of the harm caused; and 5) a person's ability to pay the fine. 493 P.3d at 114.

####    1.    Instrumentality

First, the property at issue here had a central role in the crime. Jacobo Hernandez admitted he used his vehicle to deliver methamphetamine, hiding the drugs in his gas tank. Second, the property owner had a central role in the crime and was culpable. Again, Jacobo Hernandez owned the vehicle and pleaded guilty to possession with intent to distribute methamphetamine. The parties argued in their briefs and below about whether Jacobo Hernandez played a significant role in the crime. Jacobo Hernandez avers that he was a "mere courier" for a larger drug dealer, and the record reflects that he received a sentencing adjustment for playing a comparatively minor role.[9] Additionally, he notes that the maximum

---

[9] A minor role adjustment is given under the Federal Sentencing Guidelines for a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." It entitles the defendant to a 2-level decrease. U.S. SENTENCING GUIDELINES MANUAL § 3B1.2(b); cmt. n.1 (U.S. SENTENCING COMM'N 2018).

sentence for his charge was not less than 10 years and up to life in prison, the United States recommended a sentence of no more than 63 months, and the federal judge departed significantly from both of these possible terms of confinement, instead sentencing Jacobo Hernandez to only 24 months in prison without supervised release. The City of Kent argues that Jacobo Hernandez' adjustment was only because his culpability was lower than that of his co-defendant, who had been dealing methamphetamine for years and organized the entire drug-dealing scheme. The City argues that because Jacobo Hernandez alone used his vehicle to deliver drugs, he had a central role and significant culpability. While Jacobo Hernandez is correct that he was a drug courier and the sentencing judge clearly saw his overall culpability as low, demonstrated by his comparatively short sentence, he was convicted of possession of methamphetamine with the intent to distribute. Jacobo Hernandez was central to that crime, and his culpability is evidenced by his guilty plea and conviction. Third, the "guilty property" cannot be separated from the innocent property. The vehicle was used to store, transport, and then deliver methamphetamine. Finally, the vehicle's use was planned and/or fortuitous. Jacobo Hernandez admitted to hiding methamphetamine in his gas tank, driving it to the "customer's" home, where it would be sold. He met the co-defendant as a customer of his lawful business, agreed to deliver drugs, and was promised payment for the delivery. He also acknowledged making three such deliveries total, though he was never charged for any previous deliveries.

The instrumentality factors weigh toward forfeiture; the vehicle was clearly an instrument of Jacobo Hernandez' crime. However, the forfeiture must still be proportional to the crime in order to be valid under the Excessive Fines Clause.

### 2. Proportionality

A court must also consider proportionality factors. See Tellevik, 83 Wn. App. at 375–76 (holding the trial court erred in failing to analyze proportionality factors).

First, the nature and extent of Jacobo Hernandez' crime was a drug delivery involving a significant amount of methamphetamine—he admitted to knowingly possessing approximately eight pounds of methamphetamine with the intent to distribute it. Second, the crime was related to other illegal activities, and Jacobo Hernandez admitted to making two other deliveries. Third, the other penalties that may be imposed for the crime are a mandatory minimum term of 10 years in prison, a fine of up to ten million dollars, a mandatory minimum of five years on supervised release, and a mandatory special assessment of $100. Fourth, the administrative hearing officer noted that the "legislature enacted this statute, in-part, as a deterrent to drug trafficking due to the impact that it has on our society." The final factor under Long is a person's ability to pay.[10]

Here, Jacobo Hernandez declared that the vehicle is his only asset in his estate. He has no bank accounts, savings, or financial assets other than $50 in

---

[10] Jacobo Hernandez argues that considering whether a forfeiture would deprive an individual of their livelihood should be a separate consideration from a proportionality analysis. However, Long is clear that review of an individual's financial circumstances is wrapped within the proportionality analysis. 493 P.3d at 114.

his jail account. The City did not dispute this declaration below or in its briefing on appeal to this court.[11] At sentencing, the federal judge waived all fines, finding Jacobo Hernandez was financially unable, and unlikely to become able, to pay a fine. This final factor of considering his financial condition weighs in favor of finding excessiveness.

Jacobo Hernandez argues that under the proportionality analysis, the Excessive Fines Clause prohibits forfeiting the entirety of an owner's estate, and must not deprive an owner of his livelihood. Below, both the administrative hearing officer and the superior court stated that, even if they were to consider the financial circumstances of Jacobo Hernandez, they could not focus on only one factor.[12] Our Supreme Court's guidance in Long suggests otherwise. Long sets out and meticulously examines the history of the Eighth Amendment and the Magna Carta, which forbid "penalties 'so large as to deprive [a person] of his livelihood.'" 493 P.3d at 111 (alteration in original) (quoting Browning-Ferris, 492 U.S. at 271). While Long explicitly requires courts to consider an individual's ability to pay, the extensive history upon which the court relies suggests an individual's ability to pay can outweigh all other factors. Id. at 111–12.

Long also drew from the Colorado Supreme Court, which held "the 'concept of "proportionality" itself' supported considering ability to pay," and "[a] fine that

---

[11] The City argues that the forfeiture will not deprive Jacobo Hernandez of his livelihood because the vehicle is not necessary for his ability to earn money, citing the Merriam-Webster thesaurus in support. The Merriam-Webster's Online Dicitionary defines livelihood as "means of support or substinence." (emphasis added) https://www.merriam-webster.com/dictionary/livelihood (last visited Oct 13, 2021).

[12] The court stated that it "cannot focus on just one factor" and the hearing examiner noted, "[W]hile it is unfortunate that the Claimant has put himself in the position that he is financially impoverished, the forfeiture of the vehicle neither 'shocking to the conscience' nor constitutionally an excessive, cruel, or unusual punishment in light of his illegal participation in the delivery."

would bankrupt one person would be a substantially more burdensome fine than one that did not." Id. at 113 (quoting Dep't of Labor & Emp't v. Dami Hosp., LLC, 2019 CO 47, ¶ 30–31, 442 P.3d 94 (2019)).  The Washington State Supreme Court requires courts to consider an individual's financial circumstances, but the history the court uses to come to that conclusion suggests that an individual's financial circumstances can make a forfeiture grossly disproportionate, even when all other factors support a finding otherwise.

We agree with Jacobo Hernandez' argument that "[f]or the forfeiture of an entirety of a person's estate to be proportional . . . it would have to be far more heinous than Mr. Jacobo[ ]Hernandez's role as a courier on this one (or even three) occasions."  This is particularly persuasive because Jacobo Hernandez was found to be indigent, both by the federal judge presiding over his criminal matters and by the superior court, which granted an order allowing him to proceed with his appeal at public expense.  Even given all the other proportionality factors weighing against Jacobo Hernandez, it seems illogical that the Constitution would allow the State to deprive him of his only asset, a $3,000 vehicle, when he has been found to be indigent.[13]  As our Supreme Court noted in Long, "[N]o man shall have a larger amercement imposed upon him, than his circumstances or personal estate will bear."  493 P.3d at 115 (emphasis added) (quoting Timbs, 139 S. Ct. at 688).  In his federal matter and again in his civil asset forfeiture case, Jacobo Hernandez

---

[13] The administrative hearing officer below held that Jacobo Hernandez would not be deprived of his livelihood because he had "skills that he can rely upon to earn a living." This is inconsistent with Long, which held that the fine deprived Long of his livelihood despite the fact that like Jacobo Hernandez, Long was a skilled tradesman with knowledge and experience upon which he could rely to make money. 493 P.3d at 114–15. Additionally, it seems nonsensical that the State may deprive a person of all their assets, so long as they have some skill or ability to work.

was found to be indigent. The City does not challenge this evidence. Jacobo Hernandez' estate clearly will not bear the forfeiture of his only asset, worth only a few thousand dollars, considering his indigency.[14]

### 3. Closer Scrutiny Because the State Stands to Benefit

Additionally, Washington's Supreme Court "has recognized that punitive fines should not be sought or imposed as a source of revenue." Id. at 113 (quoting State v. Grocery Mfrs. Ass'n, 195 Wn.2d 442, 476, 461 P.3d 334 (2020) (noting that much of the funding for the criminal justice system comes from fines). "Courts scrutinize 'governmental action more closely when the State stands to benefit.'" Id. (quoting Harmelin v. Michigan, 501 U.S. 957, 979 n.9, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)). In the context of civil asset forfeiture, there is a significant financial benefit for the State in seizing assets—"Washington State allows local law enforcement agencies to retain 90% of the net proceeds from drug-related assets seized."[15] We scrutinize the constitutionality of civil asset forfeitures more closely because individual law enforcement agencies, and the state government in general, stand to benefit millions of dollars each year from forfeiture.[16]

---

[14] An individual's financial circumstances may not always outweigh the other proportionality factors. However, the facts here are sufficient to support a finding of gross disproportionality.

[15] "Because a drug arrest automatically renders much of a defendant's property seizable, section 69.50.505 of the Revised Code of Washington has a disparate impact on defendants of color." See Task Force on Race and the Criminal Justice System, Preliminary Report on Race and Washington's Criminal Justice System, supra note 1.

[16] See Policing for Profit: Washington, supra note 6; see also Eric Scigliano, The Strange, Failed Fight to Rein in Civil Forfeiture in Washington, supra note 7.

II. Procedure on Remand

At oral argument before this court, the City urged the panel to remand to the superior court if we found that Long controls. It argued the record below is insufficient to conduct the proportionality test, and asserted that this court cannot know the true extent of Jacobo Hernandez' finances based only on his declaration. While it is true that our court does not find facts, the City is mistaken as to the record before us and our standard of review. See Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009) (appellate courts do not find facts).

The record on appeal contains findings by both the superior court on review and the administrative hearing examiner indicating the vehicle is Jacobo Hernandez' only asset. Additionally, Jacobo Hernandez submitted a finding by the federal judge in his criminal case concluding that he was indigent and would likely never become able to pay a fine, which was the basis for waiving that sentencing requirement. For purposes of the appeal, the superior court found he was indigent and waived fees. Unchallenged findings of fact are "verities on appeal." State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).[17]

The City did not cross-appeal or otherwise challenge any of these findings below or in its briefing before us. The City's speculative assertions at oral argument, based on mere conjecture or facts not in the record before us, are not

---

[17] At oral argument, the City contended that these findings were mixed questions of law and fact. The City misunderstands the law and Jacobo Hernandez' assignments of error. We need not reach this argument.

sufficient to challenge the evidence properly submitted by Jacobo Hernandez.[18]

Accordingly, we have sufficient facts in the record to conduct the proportionality

test. We conclude that the forfeiture of Jacobo Hernandez' vehicle was grossly

disproportionate in violation of the Eighth Amendment.

Reversed.

WE CONCUR:

---

[18] Jacobo Hernandez also assigned error to the superior court's finding of fact that he "played a significant role" in the underlying crime. He asserts in briefing that this is actually a mixed question of law and fact subject to de novo review by this court. In light of our conclusion as to his primary challenge, we need not reach this assignment of error.